UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 6:22-cv-1252-RBD-EJK

PEDRO PABLO BARRIENTOS,

    Defendant.
_____

## ORDER

Before the Court is Plaintiff's motion for judgment on the pleadings. (Doc. 10 ("Motion").) The Motion is due to be granted.

## BACKGROUND

Defendant Pedro Pablo Barrientos entered the United States in July 1990 on a visitor visa. (Doc. 1, ¶ 7.) Barrientos overstayed his visa and remained in the United States. (*Id.*) Around October 1997, Barrientos married a U.S. citizen and applied for permanent residency. (*Id.* ¶ 8.) That application asked Barrientos to list any present or past membership in any political organization in the United States or any other place and to list any foreign military service; Barrientos responded, "None." (*Id.* ¶ 9.) The application also asked if Barrientos had participated in genocide or the killing of any person because of race, religion, nationality, ethnic origin, or political opinion; Barrientos responded, "No." (*Id.* ¶¶ 10, 11.) Barrientos

signed the application under penalty of perjury. (*Id.* ¶ 12.) Four years after Barrientos submitted the application, an immigration officer interviewed Barrientos and he again certified his answers were true. (*Id.* ¶¶ 13, 14.) Based on the application and interview, Barrientos became a permanent resident. (*Id.* ¶ 15.)

In August 2010, Barrientos filed a Form N-400 for naturalization, which asked similar questions as the application for permanent residency. (*Id.* ¶¶ 16–24.) Barrientos's answers were consistent with those he gave in his earlier application for permanent residency. (*Id.*) The Form N-400 application also asked if Barrientos had ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal; Barrientos responded, "No." (*Id.* ¶ 25.) Once again, Barrientos signed his application under penalty of perjury. (*Id.* ¶¶ 26, 27.) During his interview for the Form N-400 application, an immigration officer asked Barrientos these questions again while Barrientos was under oath and Barrientos affirmed his answers. (*Id.* ¶¶ 31–39.) Based on the application and interview, Barrientos's naturalization application was approved; after he said the oath of allegiance, Barrientos became a U.S. citizen. (*Id.* ¶¶ 42, 43.)

Now it has surfaced that Barrientos's answers were false. Barrientos had served in a supervisory role in the Pinochet military coup that overthrew the Chilean government led by President Salvador Allende in the 1970s. (*Id.* ¶¶ 45, 62,

63.) After the coup, the military established detention centers around the country to interrogate, torture, and kill opponents. (*Id.* ¶ 73.) One victim was Victor Jara, a musician who was shot and killed in a detention center Barrientos oversaw in 1973. (*Id.* ¶¶ 83, 92.) In 2013, Jara's family sued Barrientos under the Alien Tort Statute and the Torture Victim Protection Act of 1991. (*Id.* ¶ 97); *see Jara v. Barrientos*, No. 6:13-cv-1426 (M.D. Fla. 2013). The *Jara* case went to trial before the Undersigned and Barrientos's military and criminal history were revealed via testimony. (Doc. 1, ¶¶ 98–103; Doc. 1-5, pp. 67:17–24, 182:6–8.) The jury found Barrientos liable for Jara's extrajudicial killing. *See Jara*, Docs. 186, 187.

Given these developments, the Government now moves to revoke Barrientos's naturalization and brings claims for Illegal Procurement of Naturalization because Barrientos was not lawfully admitted for permanent residence (Count I), lacked good moral character by committing unlawful acts (Count II), gave false testimony (Count III), and participating in extrajudicial killings (Count IV). (Doc. 1, ¶¶ 159–200.) The Government also brings a claim for procurement of U.S. Citizenship by concealment of a material fact or by willful misrepresentation (Count V). (*Id.* ¶¶ 201–06.) Barrientos failed to respond to the Complaint, so the Government moves for judgment on the pleadings as to Counts I and V (Doc. 10), to which Barrientos also failed to respond. The matter is ripe.

## STANDARDS

A citizen of the United States cannot be denaturalized by default. *See Klapprott v. United States*, 335 U.S. 601, 611–13 (1949). In these circumstances, the Government may move for a judgment on pleadings under Federal Rule of Civil Procedure 12(c) if "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005); *see United States v. Golding,* No. 14-cv-80514, 2015 WL 12001283, at *2 (S.D. Fla. July 24, 2015). "Judgment on the pleadings . . . may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). To prevail in a denaturalization proceeding, the Government must prove its case "by clear, unequivocal and convincing evidence which does not leave the issue in doubt." *Klapprott*, 335 U.S. at 612 (1949).

## ANALYSIS

First, the Government moves for judgment as to Count I, arguing that Barrientos procured his naturalization through willful concealment of material facts in his application for permanent residency. (Doc. 10, pp. 10–18.)

To be eligible to naturalize, an applicant must have been lawfully admitted to the United States for permanent residence. *See* 8 U.S.C. §§ 1427(a)(1), 1429. To be eligible for permanent resident status, an applicant must be admissible to the

United States. *See* 8 U.S.C. § 1255(a)(2); *Fedorenko v. United States*, 449 U.S. 490, 514 (1981). An applicant is inadmissible if he seeks to procure admission to the United States by willfully misrepresenting a material fact. *See* 8 U.S.C. § 1182(a)(6)(C)(i). A fact is material if it had a "natural tendency to influence . . . the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (cleaned up). And knowledge of the falsity of a representation is sufficient to establish willfulness. *See Alfaro v. U.S. Att'y Gen.*, 862 F.3d 1261, 1264 (11th Cir. 2017).

Here, it is undisputed that Barrientos spent sixteen years in the Chilean military—so his answer that he had no prior military service was false. (Doc. 1-5, pp. 67:17–24, 182:6–8.)[1] And given his lengthy time in service and his own testimony to this effect during the *Jara* suit, the record establishes that this lie was willful. (*Id.*); *see Alfaro*, 862 F.3d at 1264. Barrientos's lie was also material because it would have sparked inquiry into his military career and the coup in which he participated in extrajudicial killings of victims including Jara. *See generally* 8 U.S.C. § 1101(f)(9) (stating that a person who "at any time" has committed, ordered, incited, assisted, or otherwise participated in an extrajudicial killing has no good moral character). So Barrientos's lie about his foreign military experience had a

---

[1] The Court takes judicial notice of Barrientos' testimony in the *Jara* suit as a matter of public record. *See* Fed. R. Evid. 201(b); *Hawthorne*, 140 F.3d at 1370; *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

"natural tendency to influence the citizenship determination" as it would have revealed his inability to be naturalized. *Kungys*, 485 U.S. at 774; *see United States v. Garcia*, No. 14-CV-22397, 2015 WL 12533126, at *8 (S.D. Fla. Sept. 18, 2015). Thus, Barrientos's misrepresentations about his military career rendered him inadmissible under § 1182(a)(6)(C)(i) because they were false, willful, and material. Because Barrientos was inadmissible as a permanent resident, he was not eligible for naturalization. *See* 8 U.S.C. §§ 1427(a)(1), 1429. So judgment in favor of the Government is due to be granted as to Count I. *See Kungys*, 485 U.S. at 767.

Though the first ground is sufficient to denaturalize Barrientos, the Government also moves for judgment on Count V, arguing that Barrientos was ineligible for naturalization because he willfully concealed his military membership in his naturalization application. (Doc. 10, pp. 19–25.)

Section 1451(a) also requires revocation of naturalization where citizenship was procured by willfully misrepresenting or concealing a material fact. 8 U.S.C. § 1451(a). To establish procurement of naturalization "by concealment of a material fact or by willful misrepresentation" under 8 U.S.C. § 1451(a), the Government must show not only willful concealment of a material fact but also that the defendant "procured citizenship as a result of the misrepresentation or concealment." *Kungys*, 485 U.S. at 767. As to this last element, "[i]f the misrepresentation is such that the truth would predictably have disclosed other

facts relevant to the applicant's qualifications, then proof thereof would raise a rebuttable presumption of ineligibility for citizenship." *United States v. Pirela Pirela*, 809 F.3d 1195, 1200 (11th Cir. 2015) (cleaned up). This "presumption of ineligibility does not arise unless the Government produces evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Id.*

As the Court found above, Barrientos's misrepresentation of his military history was willful and material. This misrepresentation in his naturalization application is also material because had Barrientos answered truthfully and stated that he had foreign military experience, this would have revealed that his previous nondisclosure of his military service in his permanent residency application was a willful and material omission rendering him inadmissible as a permanent resident and thus ineligible for naturalization. *See* 8 U.S.C. §§ 1427(a)(1), 1429, 1255(a)(2). As to the procurement element, had Barrientos disclosed his military history, it would have revealed "other facts relevant to the [his] qualifications," such as his active participation in a coup in which he directed extrajudicial killings of individuals for political differences. *Pirela*, 809 F.3d at 1200. A jury has already found Barrientos responsible for Jara's extrajudicial killing, so there is also more than a "fair inference" that the statutory disqualifying fact—Barrientos engaging in an extrajudicial killing—actually existed. *See Jara*, Docs. 186, 187. *See generally* 8 U.S.C. § 1101(f)(9) (stating that a person who "at any time" has committed,

7

ordered, incited, assisted, or otherwise participated in an extrajudicial killing is not of good moral character). So judgment in favor of the Government is also due to be granted on Count V.

With the Court finding denaturalization, the Government moves to dismiss its remaining claims without prejudice as moot. (Doc. 10, p. 2 n.2); *see, e.g.*, *United States v. Negele*, 222 F.3d 443, 448 (8th Cir. 2000). Because the remaining counts in the Complaint are just alternative grounds on which to denaturalize Barrientos (*see* Doc. 1, ¶¶ 173–200), the Court dismisses these claims without prejudice.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. The Government's Motion (Doc. 10) is **GRANTED**.

    a. Defendant Pedro Pablo Barrientos's naturalization is revoked and the Certificate of Naturalization No. 34032627 issued to Defendant is canceled, effective as of the original date of his naturalization, December 17, 2010.

    b. Defendant is forever restrained and enjoined from claiming or exercising any rights, privileges, benefits, or advantages in connection with his December 17, 2010 naturalization.

    c. Defendant shall immediately surrender and deliver, within ten days of the entry of judgment against him, his Certificate of

        Naturalization and any copies thereof in his possession—and to make good faith efforts to recover and immediately surrender any copies thereof that he knows are in the possession of others—to the Attorney General, or his representative, including the Assistant U.S. Attorney in this case.

    d.   Defendant shall surrender and deliver, within ten days of the entry of judgment against him, any other indicia of U.S. citizenship (including, but not limited to, U.S. passports, voter registration cards, and other voting documents) and any copies thereof in his possession—and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others—to the Attorney General, or his representative.

2. The Clerk is **DIRECTED** to enter judgment in favor of the Government and against Defendant on Counts I and V (Doc. 1, ¶¶ 159–72, 201–06).

3. Counts II–IV (Doc. 1, ¶¶ 173–200) are **DISMISSED WITHOUT PREJUDICE**.

4. The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 14, 2023.

ROY B. DALTON JR.
United States District Judge